IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KEVIN BRYAN SHELTON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:13-CV-470 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Kevin Bryan Shelton ("Shelton") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Shelton asserts that the Administrative Law Judge ("ALJ") erred in this case by failing to give greater weight to the opinions of his treating physician and by failing to find Shelton's testimony fully credible. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND DENYING** Shelton's Motion for Summary Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Shelton failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---
[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Shelton filed for DIB on June 17, 2010, claiming that his disability began on June 10, 2010. R. 308–11, 336. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 241–46, 248–51. On March 30, 2012, ALJ Geraldine H. Page held a hearing to consider Shelton's disability claim. R. 178–209. Shelton was represented by an attorney at the hearing, which included testimony from Shelton and vocational expert Robert Jackson. R. 178–209.

On June 22, 2012, the ALJ entered her decision analyzing Shelton's claim under the familiar five-step process[2] and denying Shelton's claim for benefits. R. 160–170. The ALJ found that Shelton suffered from the severe impairments of obesity, avascular necrosis of both femoral heads, status-post right hip replacement, mild disc and joint changes, and piriformis syndrome.

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2),.

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

R. 162. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 163. The ALJ further found that Shelton retained the RFC to perform sedentary work, and specifically can lift and carry up to 10 pounds frequently and 20 pounds occasionally.[3] R. 163. The ALJ also found that Shelton had the following additional limitations: 1) never kneel, crawl, climb ladders, ropes or scaffolds; 2) never work around heights, vibrating surfaces or hazards; 3) occasionally stoop, crouch, balance and climb ramps and stairs; and 4) must change postural positions between sitting and standing briefly while in place every 30 minutes without leaving his workstation. R. 163. The ALJ found that Shelton could not return to his past relevant work as an HVAC mechanic and sales representative (R. 168), but that Shelton could work at jobs that exist in significant numbers in the national economy, such as assembler, material handler and telephone order clerk. R. 169. Thus, the ALJ concluded that Shelton was not disabled. R. 169.

Shelton appealed the ALJ's decision, and submitted additional medical evidence to the Appeals Council. R. 5. On August 27, 2013, the Appeals Council denied Shelton's request for review (R. 1–7), and this appeal followed.

## ANALYSIS

Shelton alleges that the ALJ erred by 1) failing to give adequate reasons for rejecting the limitations assessed by his treating physician, Ivaylo Staykov, M.D.; and 2) finding his subjective pain complaints to be less than fully credible. Having reviewed the record as a whole, and for the reasons stated below, I find that the ALJ's decision is supported by substantial evidence and should be affirmed.

---

[3] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

Shelton's disability claim is based upon back pain, numbness in his hands and elbows, and complications with his right hip after a right hip replacement. Shelton was 46 years old on his alleged disability date, and has a high school education, four years of college and four years of trade school. R. 168, 181–82. Shelton previously worked as a HVAC mechanic and sales representative, and stopped working on June 9, 2010, due to leg and hip pain and avascular narcosis of his bilateral femoral heads. R. 168, 183, 201–02.

On June 16, 2010, Shelton underwent a right hip replacement. R. 428–31. Shelton was discharged a few days later, with prescriptions for pain medications, and instructions to attend physical therapy, and avoid heavy lifting, pushing or pulling on his right side for two months. R. 430–31. Shelton subsequently suffered an adverse psychological reaction on two occasions to medication pain medication, resulting in admission to a mental hospital for 10 days each time.[4] R. 842–46, 847–50. Shelton stopped taking pain medication due to the adverse mental side effects. R. 610.

On July 9, 2010, Shelton visited his treating surgeon, John Mann, M.D., for a follow up of his right hip replacement. R. 559–62. Dr. Mann recommended continued physical therapy, and noted that Shelton can return to work on September 13, 2010, with the following permanent restrictions: 1) no lifting over 40 pounds; 2) no repetitive bending, squatting, kneeling or climbing; and 3) standing and walking no more than five hours per day. R. 562.

Shelton returned to see Dr. Mann on August 13, 2010, complaining of mild pain, a tight cramping band in his thigh, and pins and needle sensation from his lateral hip down to his knee. R. 580. Dr. Mann prescribed pain medication, and instructed Shelton to continue physical therapy and wean from his cane as tolerated. He also continued Shelton out of work for six

---

[4] Shelton's mental status is not at issue in this appeal. See Pl's Br. Summ. J. p. 25–29.

4

weeks. R. 581. On September 13, 2010, Dr. Mann wrote a letter "To Whom It May Concern," stating that Shelton will be released to work on September 27, 2010, with the same restrictions noted above. R. 570.

Shelton underwent physical therapy from July 2010 through October 2010, with steady progress. Shelton's range of motion and strength in his right hip improved, although he continued to complain of pain in his right thigh. R. 592–608.

In November 2010, Shelton visited nurse practitioner Glendora Raplee at Lewis-Gale Physicians, who assessed Shelton with chronic right hip pain post total hip replacement, mental status and personality change due to medications, and left elbow pain. R. 611. She recommended a neurology evaluation. R. 610–11. On February 23, 2011, orthopedic surgeon James Carr, M.D., evaluated Shelton, and noted that Shelton's back was mildly tender and he had a negative straight leg raising test. R. 628. Shelton walked with a slight limp, but had a full range of motion and no instability in his right hip. R. 628. Dr. Carr found that Shelton's alleged pain and numbness were a result of his right hip surgery and would resolve over time. R. 628. He agreed with Dr. Mann's work restrictions, and recommended that Shelton obtain treatment for his sciatic neuropathy. R. 628.

Shelton subsequently visited consulting neurologist Ivaylo Staykov, M.D., three times between February and April 2011. R. 625, 650–58. On February 1, 2011, Shelton continued to complain of right lower extremity pain, occasionally shooting from his back to his right foot. He noted that his pain gets worse with sitting for a long period of time and improves with movement. Shelton also complained of paresthesias in his right lateral femoral cutaneous nerve distribution, and reported that standing and walking occasionally alleviates his symptoms. R. 625. On exam, Dr. Staykov found slightly decreased range of motion of Shelton's right hip, and positive straight leg raise test on the right with lumbar paraspinal tenderness on palpation.

5

His gait was slightly antalgic, and he had decreased sensation in his right anterolateral thigh. He also had a positive Tinel's sign at his left elbow. R. 625. Dr. Staykov recommended that Shelton obtain a nerve conduction study for right-sided sciatica, right-sided meralgia paresthetica (numbness or pain in outer thigh) and left upper extremity ulnar neuropathy. Dr. Staykov also recommended continued physical therapy. R. 626.

Shelton followed up with Dr. Staykov on April 1, 2011, with continued complaints of right hip and buttocks pain. R. 650. Dr. Staykov noted that Shelton obtained nerve conduction studies that revealed no response from the right lateral femoral cutaneous sensory nerve. All other nerves were within normal limits. See R. 654. Dr. Staykov noted significant pain with Shelton's right hip flexed at 90 degrees, and flexion, abduction and internal rotation of the right leg. Dr. Staykov noted a suspected diagnosis of piriformis syndrome and meralgia paresthetica of the right lateral femoral cutaneous nerve. He suggested continued physical therapy and a nerve block on Shelton's right lateral femoral cutaneous nerve. R. 650.

On May 11, 2011, Dr. Staykov completed a physical ability to work-related activities checkbox form for Shelton. R. 632. He found that, due to his piriformis syndrome, meralgia paresthetics and sciatica, Shelton can lift or carry less than ten pounds, stand, walk or sit for less than two hours in an eight-hour workday, can perform limited pushing or pulling with his lower extremities, and can never balance, kneel, crouch, crawl, stoop, or climb ramps, stairs, ladders, ropes or scaffolds. R. 633. Dr. Staykov also determined that Shelton would be absent from work more than three times per month due to his impairments and treatment. R. 635.

On May 27, 2011, Shelton returned to Nurse Raplee for completion of FMLA forms. R. 659. Nurse Raplee noted that Shelton had chronic right hip and leg pain after his total hip replacement, and was evaluated by an orthopedist and sent to a neurologist who diagnosed him with piriformis syndrome. She also noted that Dr. Staykov referred Shelton to a physiatrist to

help control and reduce his pain. Nurse Raplee recommended that Shelton remain out of work for at least 60 days. R. 659.

On June 14, 2011, Shelton met with physiatrist Deborah Mowery, M.D., who found that Shelton had mechanical back pain and piriformis syndrome related to right SI dysfunction from an abnormal gait pattern, as well as meralgia paresthetica in the lateral femoral cutaneous nerve distribution in his right lower extremity. R. 638–40. Dr. Mowery recommended weight loss, water aerobics, and Lidoderm patches. She requested an updated MRI of the lumbar spine, and a repeat EMG. She further recommended trying low dose Neurontin, and asked Shelton to discontinue chiropractic manipulation and advised him to follow up with Dr. Mann to assure that his pain was not caused by the hardware from his hip replacement. R. 639–40. There are no records of a return visit to Dr. Mann. An MRI taken on June 24, 2011 showed some mild degenerative changes, but no disc herniation. R. 649.

Shelton followed up with Dr. Mowery on September 12, 2011, and reported that he did not take Neurontin as recommended. R. 673. Shelton also reported that his back symptoms were markedly improved, although he still had leg pain and tenderness. Dr. Mowery noted that Shelton's quads had normal strength, he had normal reflexes in his right lower extremity and a negative strep sign. She again recommended that Shelton try a low dose of Neurontin, as well as Cymbalta. R. 673.

Shelton returned to see Dr. Mowery on December 13, 2011, and reported that his right lower extremity symptoms were "doing well." R. 671. Shelton's lateral femoral cutaneous symptoms were improving, and he still had some bursal pain on the lateral side along the TFL band. Dr. Mowery found that therapy had improved Shelton's adductor tenderness and leg strength "quite a bit." R. 671. She recommended that Shelton continue with therapy, and undergo an EMG for his right upper extremity, as well as a cervical MRI. R. 671.

7

Thereafter, Shelton received chiropractic treatment with Balance Chiropractic and Wellness from February 2011 through March 2012, for pain in his low back, right hip, right leg, and numbness in his right leg and right arm. R. 70–85, 90–156, 726–825, 829–30, 852–875. Shelton began to report improvement in his pain in all areas in February 2011 (R. 732–42), and in March 2011 reported that his back pain was almost gone and his hand and wrist pain had improved. R. 760. Shelton stated that he was able to pressure wash his deck in segments of four hours at a time. R. 762. Later in March, Shelton stated that he was sore after hiking for five and a half hours. R. 766. Shelton continued to report improvement in his right hip pain throughout 2012, although the pain never fully resolved. R. 778, 859, 868.

After the ALJ rendered his opinion, Shelton submitted additional medical records to the Appeals Council reflecting that he continued to seek chiropractic care for pain in his bilateral SI joints, right anterior leg and hip from July 2012 through May 2013.[5] R. 41–67, 70–86, 90–156. On April 10, 2013, Shelton met with pain management specialist Tammy Lovette, M.D., complaining of continued pain in his back and leg. R. 10. Dr. Lovette noted that Shelton's lumbar region was tender to palpation in the midline, and he had pain with flexion and extension of his bilateral lower extremities. Otherwise, he had normal motor function, symmetric range of motion in his hips, negative straight leg raise and contralateral straight leg raise, normal reflexes and no sensory deficits in his lower extremities. R. 13. Dr. Lovette assessed Shelton with lumbar degenerative disc disease, and recommended physical therapy and possible epidural steroid injections if his pain doesn't improve. R. 13.

---

[5] In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this Court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).

8

**Treating Physician**

Shelton alleges that the ALJ erred by failing to give greater weight to the opinion of his treating neurologist, Dr. Staykov, who found that Shelton could lift no more than 10 pounds, stand, walk and sit less than two hours in an eight hour workday, and would be absent from work at least three days per month. The ALJ considered Dr. Staykov's opinion with regard to Shelton's functional limitations, and gave it little weight, finding his recommended restrictions extreme and unsupported by the record. R. 168. Having reviewed the medical records in this case, I find that substantial evidence supports the ALJ's conclusion that Shelton is capable of performing a restricted range of sedentary work.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781, at *2 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

9

Here, the ALJ appropriately considered the factors set forth above and the record as a whole in giving some weight to the opinions of Drs. Mann and Carr, and little weight to the opinion of Dr. Staykov. Dr. Staykov's opinion that Shelton suffers work-preclusive restrictions is unsupported by the objective medical evidence, is contradicted by the other medical opinion evidence in the record, and is inconsistent with Shelton's subjective statements.[6] For example, Dr. Staykov's finding that Shelton is incapable of lifting 10 pounds is contradicted by the findings of both Dr. Mann and Dr. Carr that Shelton can lift up to 40 pounds frequently (R. 570, 628), as well as by Shelton's own testimony at the administrative hearing that he can lift 20 pounds. R. 196. Likewise, Dr. Staykov's finding that Shelton can stand, walk and sit less than two hours in an eight hour workday is contradicted by Dr. Mann and Dr. Carr's opinion that Shelton is capable of standing and walking up to five hours a day. R. 570, 628.

Dr. Staykov's opinion that Shelton suffers work-preclusive limitations is further unsupported by the medical records as a whole. The records demonstrate that Shelton made a good recovery from his hip replacement, such that within eight months after the surgery two different orthopedic surgeons released him to work with limited restrictions. R. 570, 628. Shelton's range of motion and strength in his right hip improved with physical therapy (R. 592–608), and by February 2011, he walked with a slight limp, but had a full range of motion and no instability in his right hip. R. 628.

Shelton continued to suffer from neuropathic issues throughout the alleged period of disability, specifically with pain in his right lower extremity, from his back down to his right

---

[6] Notably, Dr. Staykov's opinion is simply a checkbox form. Courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms. Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician.")

foot, and paresethias in his right femoral nerve. However, a claimant cannot make a showing of disability merely by demonstrating that he experiences pain. Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays, 907 F.2d at 1457–58) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). The pain must be so severe as to prevent the claimant from performing any substantial gainful activity. Shelton's records do not demonstrate that his pain prevented him from performing the limited range of sedentary work recommended by the ALJ. In September 2011, physiatrist Dr. Mowery found that Shelton had normal strength and reflexes in his right lower extremity, and by December 2011, Shelton reported that his lower extremity symptoms were "doing well." R. 671. By February 2011, Shelton received only chiropractic treatment for his neuropathic pain issues. Shelton reported improvements in his pain over the next few months, and also reported attempts to perform more strenuous physical activity. R. 760, 762, 766.

Shelton argues that the ALJ improperly discounted Dr. Staykov's opinion based upon evidence of activities that Shelton performed one time—pressure washing his desk and hiking—during the period of alleged disability, while Dr. Staykov's opinion addresses Shelton's functional capacity to perform tasks eight hours a day, five days a week. The ALJ properly considered Shelton's reports to his physicians of activities he attempted to perform, together with all the evidence of record. There is no indication that the ALJ improperly placed more weight on those particular statements, than other relevant evidence. The ALJ is tasked with reviewing the medical evidence of record, weighing the medical opinions, and arriving at an RFC that fairly represents Shelton's functional capacity despite his impairments. Here, the ALJ considered the opinion of Dr. Staykov, together with all the evidence of record, including Shelton's reported activities, and determined that Shelton was capable of a very limited range of sedentary work.

11

Within eight months after his right hip replacement surgery, Shelton's treating surgeon Dr. Mann and consulting orthopedic surgeon Dr. Carr both determined that Shelton could return to work if restricted to lifting less than 40 pounds, standing and walking less than five hours a day, and no repetitive bending, squatting, kneeling or climbing. R. 570, 628. The ALJ adopted these restrictions in the RFC, and further limited Shelton to lifting no more than 20 pounds occasionally, and required postural position changes every 30 minutes. R. 163. Accordingly, I find that substantial evidence supports the ALJ's decision to give Dr. Shelton's opinion little weight.

### **Credibility**

Shelton also challenges the ALJ's determination that his testimony is not fully credible. At the administrative hearing, Shelton testified that he lives with his wife and 14 year-old daughter. R. 194, 366. His daily routine includes helping his daughter get ready for school and complete her homework, performing light housework, walking to get the mail, completing physical therapy exercises and watching television. R. 194, 366–68. Shelton leaves his home daily, either by walking, driving or riding in a car. R. 194, 369, 393. He attends church once a week and can shop for 30 minutes at a time. R. 370. Shelton stated that he can care of his pets, his personal needs, fix a meal, wash clothes and dishes, take out the trash and get the mail. R. 390, 392.

On his disability application, Shelton indicated that he can lift 40 pounds and walk short distances, but not kneel, squat or climb. R. 396. At the administrative hearing, Shelton testified that he can walk only 150 feet and lift 20 pounds occasionally, due to pain. R. 189, 196. Shelton also testified that he has to lie down and ice his hip and leg four to five times a day. R. 195. Shelton further testified that he can stand for 20–30 minutes before needing to change position and can sit for 20–30 minutes without pain. R. 189–90.

The ALJ found that while Shelton's medically determinable impairments could reasonably be expected to cause the alleged symptoms; his statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent that they are inconsistent with the RFC. R. 167. Specifically, the ALJ noted that Shelton's objective medical evidence, his treatment history, and his reported daily activities do not fully support his allegations regarding the severity of his functional limitations. R. 167.

It is the ALJ's duty, not this court's, to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In doing so, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Shelton met his burden to prove that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996); see also 20 C.F.R. § 416.929(c) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you. We also consider the medical opinions of your treating source and other medical opinions as explained in § 416.927."). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Shelton's ability to work. Craig, 76 F.3d at 594–95. The ALJ is not required to accept a claimant's allegations of his limitations, though, if they are inconsistent with the objective evidence of the underlying impairment, or with the extent to which the impairment can reasonably be expected to cause the pain alleged. Hines v. Barnhart, 453 F.3d 559, 565 & n.3 (4th Cir. 2006) (citing Craig, 76 F.3d at 595).

Here, the ALJ made detailed credibility findings as to Shelton's subjective complaints of his symptoms related to his back, right hip and leg pain. R. 167. The ALJ properly considered

13

the limited nature of Shelton's medical treatment, his success controlling his symptoms with conservative treatment, and evidence of Shelton's inconsistent statements; which are all proper bases for discounting a claimant's credibility. See, e.g., Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (failure to seek treatment can be basis for discounting claimant's credibility).

Further, the ALJ did not assert that Shelton was pain-free. To the contrary, the ALJ found that Shelton suffers from severe conditions that greatly limit his ability to function. The ALJ accounted for the limitations imposed by Shelton's conditions by limiting him to very restricted range of sedentary work. The ALJ accepted and accounted for Shelton's subjective statements of pain by requiring position changes from sitting to standing every 30 minutes.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, I must uphold the ALJ's determination. Spencer v. Barnhart, Civ. Action No. 7:06cv420, 2007 WL 1202865, at *1 (W.D. Va. Apr. 20, 2007) (citing Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). Here, the ALJ's decision identifies the evidence forming the basis of his credibility determination, and adequately explains his reasons for finding Shelton's statements about his symptoms not fully credible. I must therefore affirm the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the

14

defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 18, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge