# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| KEVIN BRYAN SHELTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:13cv00470 |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on February 18, 2015, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff has filed objections to the report and this matter is now ripe for the court's consideration.

### I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any

> issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

<u>Id.</u> The district court must determine <u>de novo</u> any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); <u>accord</u> 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" <u>de novo</u> review is not required. <u>Diprospero v. Colvin</u>, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting <u>Howard Yellow Cabs, Inc. v. United States</u>, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." <u>Camper v. Comm'r of Soc. Sec.</u>, No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), <u>aff'd</u>, 373 F. App'x 346 (4th Cir.), <u>cert. denied</u>, 131 S. Ct. 610 (2010); <u>see</u> <u>Midgette</u>, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such

2

general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of [his] entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates his previously-raised arguments will not be given "the second bite at the apple [ ]he seeks;" instead, his re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.

On summary judgment, Shelton raised two arguments before the magistrate judge— 1) that the Administrative Law Judge ("ALJ") erred in failing to give greater weight to the opinion of neurologist Dr. Ivaylo Staykov; and 2) that the ALJ's credibility findings are not supported by substantial evidence. Shelton takes issue with the magistrate judge's analysis of those arguments in several respects. First, as regards Dr. Ivaylo Staykov's opinion as to Shelton's residual functional capacity ("RFC"), Shelton argues the magistrate judge "erroneously concludes that Dr. Staykov's residual functional assessment is only a checkbox

3

form without any explanatory comment" and thus has limited probative value. Pl.'s Obj., Dkt. # 24, at 1. Shelton also contends that the magistrate judge "fills in the gaps of the ALJ's decision [to reject the opinion of Dr. Staytkov] and tries to explain" it for the ALJ. Id. at 2. Shelton argues the court "cannot create a logical bridge for the ALJ that the ALJ did not create herself." Id. Finally, Shelton claims the magistrate judge "erroneously concludes that substantial evidence supports the ALJ's credibility findings." Id. at 2-3.

The court has reviewed de novo those portions of the report and recommendation to which Shelton has specifically objected and concludes the Commissioner's decision is supported by substantial evidence.

### III.[1]

Shelton argues first that the magistrate judge erred in finding that Dr. Staykov's opinion as to Shelton's residual functional capacity was set forth in a "checkbox" form without any explanation for his findings. Shelton argues that "[i]n reality, Dr. Staykov's form provides explanatory comments regarding the opinions he rendered in the RFC form." Pl.'s Obj., Dkt. # 24, at 1.

This "finding" of the magistrate judge to which Shelton takes issue is set forth in two sentences in a footnote on page 10 of the report and recommendation:

> Notably, Dr. Staykov's opinion is simply a checkbox form. Courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms. Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician.").

---

[1] Detailed facts about Shelton's impairments and medical and procedural history can be found in the report and recommendation (Dkt. # 23) and in the rather voluminous administrative transcript (Dkt. # 8). As such, they will not be repeated here.

4

Report & Recommendation, Dkt. # 23, at 10 n.6. The court finds no error in the magistrate judge's characterization of this RFC assessment.

The document at issue is, indeed, a checkbox form, which Dr. Staykov filled out on May 11, 2011. (R. 632-35.) Dr. Staykov indicated that Shelton can lift less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, sit less than 2 hours in an 8-hour workday, has a limited ability to push and/or pull with his lower extremities and can never climb, balance, kneel, crouch, crawl or stoop. Dr. Staykov further indicated he anticipates Shelton would be absent from work more than three times per month as a result of his impairments and/or treatment. In terms of medical findings that support Shelton's exertional and postural limitations, Dr. Staykov simply recites Shelton's diagnoses: (1) sciatica; (2) piriformis[2] syndrome; (3) meralgia paresthetica.[3] He did not include any further elaboration or explanation for the severe limitations set forth in this assessment.

The magistrate judge is correct in stating these checkbox forms are of limited probative value. See Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012); see also Ferdinand v. Astrue, No. 4:12CV80, 2013 WL 1333540, at *10 n.3 (E.D. Va. Feb. 26, 2013). "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (1993).

In any event, this was, by no means, the only thing relied on by the magistrate judge. Rather, the magistrate judge held the ALJ appropriately considered the relevant factors in deciding to give Dr. Staykov's opinion little weight, and found that "Dr. Staykov's opinion

---

[2] Referring to the piriformis muscle, which is responsible for rotating the thigh laterally. Dorland's Illustrated Medical Dictionary 1200 (30th ed. 2003).
[3] "Meralgia paresthetica" is defined as "a type of entrapment neuropathy caused by entrapment of the lateral femoral cutaneous nerve at the inguinal ligament, causing paresthesia, pain, and numbness in the outer surface of the thigh in the region supplied by the nerve." Dorlands, supra, at 1129.

5

that Shelton suffers work-preclusive restrictions is unsupported by the objective medical evidence, is contradicted by the other medical opinion evidence in the record, and is inconsistent with Shelton's subjective statements." Report & Recommendation, Dkt. # 23, at 10. Specifically, the magistrate judge pointed to the fact that Dr. Staykov's opinion as to Shelton's exertional limitations is contradicted by the opinion of Dr. Mann, Shelton's treating surgeon, and Dr. Carr, an orthopedic surgeon, and by the testimony of Shelton himself at the administrative hearing. The magistrate judge then describes how the medical record as a whole fails to support Dr. Staykov's opinion that Shelton suffers work-preclusive functional limitations. See Report & Recommendation, Dkt. # 23, at 10-12. Shelton argues this was error, because the "Report and Recommendation fills in the gaps of the ALJ's decision," and the magistrate judge "cannot create a logical bridge for the ALJ that the ALJ did not create herself." Pl.'s Obj., Dkt. # 24, at 2. The court disagrees.

In her decision, the ALJ explicitly stated that she considered the opinion evidence in this case in accordance with the requirements of 20 C.F.R. §§ 404.1527, 416.927. (R. 167.) These regulations require the ALJ to consider: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The ALJ recited these factors in her opinion. (R. 167.) The regulations also require the ALJ to "give good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "a point-by-point articulation of each inconsistency [between the treatment notes and a treating physician's opinion as to a claimant's functional capacity] is

6

not required for the court to understand the ALJ's reasons for weight given the opinion."

Hawley v. Colvin, No. 5:12-CV-260-FL, 2013 WL 6184954, at *4 (E.D.N.C. Nov. 25, 2013).

In this case, the ALJ sufficiently explained her reasons for giving little weight to Dr. Staykov's opinion concerning Shelton's functional capacity, stating:

> Dr. Staykov's opinion is also given little weight, even though he treated the claimant. His opinion contains extreme limitations, such as the inability to lift even 10 pounds or to walk 2 hours in a day, which are not supported by the medical evidence of record. (Exhibit 18F) The medical evidence of record showed only moderate symptoms of pain. Also, just two months before Dr. Staykov rendered his opinion, the claimant was pressure washing his deck for 4 hours at a time and hiking for 5 $^1/_2$ hours.

(R. 168.) Inconsistency with the record is an appropriate reason pursuant to Johnson and the regulations for the ALJ to have declined to adopt Dr. Staykov's opinion. See Bishop v. Comm'r, No. 14-1042, 2014 WL 4347190, at *1 (4th Cir. Sept. 3, 2014) ("While the ALJ did not explicitly analyze each of the Johnson factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under Johnson."). Shelton suggests that the ALJ did not sufficiently elaborate on these inconsistencies and "merely states that the limitations outlined by Dr. Staykov are not supported by the medical evidence of record." Pl.'s Obj., Dkt. # 24, at 2. But, in so arguing, Shelton ignores the ALJ's detailed recitation of the medical evidence in the previous four pages of her decision. (R. 164-67.) This thorough examination of the medical evidence, including the 40 pound exertional limitation imposed by Dr. Mann, the reported improvement in Shelton's symptoms with fairly conservative treatment, and the diagnostic findings that showed only mild degenerative changes, is a sufficient explanation for the ALJ's conclusion that Dr. Staykov's opinion as to Shelton's functional capacity is not supported by the medical evidence. In addition, the ALJ correctly

7

noted that Shelton only saw Dr. Staykov three times (another <u>Johnson</u> factor to be considered) and discussed Dr. Staykov's clinical findings, which do not support the severe limitations set forth on his RFC form:

> Dr. Staykov noted that the claimant['s] neurological exam was consistent with right side sciatica and paresthetica and ordered EMG nerve conduction testing. Upon examination, the claimant had full strength and only slightly decreased right hip range of motion and slightly antalgic gait. (Exhibit 21F at 3-5) In April 2011, Dr. Staykov stated that the EMG testing did not show radiculopathy and that an X-ray of the claimant's spine showed only mild degenerative changes. He said that testing confirmed paresthesia and he suspected piriformis syndrome. (Exhibit 21F at 1) He referred the claimant to Dr. Mowery.

(R. 165-66.) Thus, the ALJ properly considered this opinion evidence using the <u>Johnson</u> factors and provided sufficient explanation for her decision to give Dr. Staykov's opinion little weight. Contrary to Shelton's assertions, there were simply no "gaps" in the ALJ's opinion for the magistrate judge to fill.

Moreover, the court notes that its role on judicial review is to determine whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. <u>See</u> <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990); <u>see also</u> <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966). In making such a determination in this case, the magistrate judge properly reviewed the entirety of the record and found that Dr. Staykov's opinion as to Shelton's functional limitations is inconsistent with the evidence as a whole. The court finds no error in the manner in which the magistrate judge discharged this duty.

## IV.

Shelton further objects to the magistrate judge's finding that the ALJ properly assessed his credibility. Shelton argues that in her decision, the ALJ "did not point to

8

substantial evidence in support of her credibility findings and, consequently, the Court erred in upholding the ALJ's credibility determination." Pl.'s Obj., Dkt. # 24, at 3. Shelton specifically argues the ALJ failed to acknowledge that Shelton requires assistance to perform most activities and can only do so for a short time before needing to stop and rest. Shelton also asserts that his pain "continued at a level of severity that prevented him from engaging in substantial gainful activity." Pl.'s Obj., Dkt. # 24, at 3. Plaintiff raised both of these arguments on summary judgment. Pl.'s Summ. J. Br., Dkt. # 15, at 28-29. Nevertheless, the court has reviewed the ALJ's credibility analysis and finds no error in the magistrate judge's decision to uphold it.

> The ALJ documented Shelton's complaints of pain as follows:
>
>> The claimant testified that he had a right hip replacement in 2010 due to avascular necrosis in his hips. He testified that he has had complications with his right hip ever since then. He added that pain from his right hip radiates down his entire leg. He said his pain is increased after sitting, standing, or walking in the same position for over 30 minutes. He estimated that he could walk only 150 feet and lift 20 pounds occasionally. The claimant also said that he has some problems using his hands because they were injured when he had the psychotic adverse reaction to his medication and had to be retained. He said that he occasionally experiences numbness in his hands and elbows.
>>
>> The claimant said that he currently goes to physical therapy once per week, and he used to go three times per week. He also sees a chiropractor regularly. The claimant said that his daily activities are very limited because he has to lie down and ice his hip and leg 4 to 5 times per day. He testified that he cannot tolerate narcotic pain medication. The claimant said that he drives but not very far. He helps get his daughter to school, but he said that his wife does most of the cooking and cleaning. When asked about the activities listed in function reports at Exhibits 7E and 11E, the claimant said that he still performs those activities listed on the forms.

9

(R. 164.) The ALJ found Shelton's statements concerning the limiting effects of his impairments to be inconsistent with the medical evidence:[4]

> In terms of the claimant's alleged pain in his back, hip, leg, neck, and arm, the objective medical evidence of record does not support his allegations. First, although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. The claimant did not take prescription pain medication (due to the side effects), but he was still able to control his pain and report improvement. Also, even when the claimant was offered non-narcotic medications, such as Neurontin or injections, to which he had not had adverse reactions, he declined these treatments.
>
> Although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. The claimant reported that his pain had improved with conservative treatment.

(R. 167.) As stated, supra, the ALJ's decision contains a thorough review of the medical findings in this case, none of which documents the degree of severe limitation Shelton claims to suffer. Additionally, the ALJ notes that while the evidence reflects Shelton occasionally experienced increased pain, he did not complain about being significantly limited in his activities:

---

[4] The court notes that the ALJ uses the following boilerplate language in her analysis:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

(R. 167.) Recently, in Mascio v. Colvin, No. 13-2088 (4th Cir. Mar. 18, 2015), the Fourth Circuit held that this boilerplate "gets things backwards" and conflicts with the agency's own regulations, which require the ALJ to determine the extent to which a claimant's alleged functional limitations are consistent with the medical findings and other evidence. Id. at 16-17. The Fourth Circuit found, however, that any error associated with use of this boilerplate is harmless if the ALJ "properly analyzed credibility elsewhere." Id. at 18. In this case, the ALJ properly analyzed Shelton's credibility in spite of this boilerplate language.

10

> The claimant generally continued to report improvement in his back, leg, and hand symptoms throughout 2012. He reported improvement in his right hip pain, but it never completely went away. (Exhibit 26F at 53) The claimant did not complain about being significantly limited in his activities, even though he occasional[ly] experienced increased pain. Also, when he complained of increased pain in an area, it was usually due to strenuous activity much greater than that contemplated by his residual functional capacity, and the pain generally resolved by his next visit. For example, the claimant reported increased pain when he had to stand a long time at a friend's house and when walking up his friend's driveway that was so steep he could not drive his car on it. (Exhibit 26F at 71, 95) Overall, he reported his back and leg pain was doing better. (Exhibit 26F at 87)

(R. 166.) Indeed, in his credibility analysis, the ALJ found Shelton's allegations as to the limiting effects of his symptoms to be inconsistent with his activities documented in the record:

> At various points in the record (in forms completed in connection with the application and appeal, in examinations or evaluations with medical professionals, or in the claimant's testimony), the claimant has reported doing housework, doing yard work, caring for his children, and caring for pets. Also, the treatment records [show] that the claimant performed strenuous activities, such as hiking and pressure washing, for long periods of time, even though he denied the ability to do such strenuous activities in his sworn testimony at the hearing. Given the complaints of disabling symptoms and limitations, such activities are not limited to the extent one would expect.

(R. 167.) As the magistrate judge held, these are all proper bases for discounting a claimant's credibility as to his degree of limitation. Report & Recommendation, Dkt. # 24, at 13-14; see Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005); Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984).

As such, the court finds the ALJ conducted a proper credibility analysis in this case and sufficiently explained her reasons for finding Shelton's allegations as to his degree of functional limitation not to be credible. Credibility determinations are emphatically the

11

province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)).

## V.

At the end of the day, it is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The court has reviewed the magistrate judge's report, the objections to the report, and the administrative record and, in so doing, made a de novo determination of those

12

portions of the report to which Shelton properly objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: March 20, 2015

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge